IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS,
DALLAS DIVISION

| | |
|---|---|
| KELLY HALL AND<br>JOHN CROWDER, JR.<br><br>Plaintiffs,<br><br>v.<br><br>PHENIX INVESTIGATIONS, INC.;<br>CARROLL FAMILY INVESTMENTS,<br>LTD.; WOOD, THACKER &<br>WEATHERLY, P.C.; SAMUEL B. BURKE;<br>R. WILLIAM WOOD; C. JANE<br>THACKER; JARED ZENTH; AND<br>CARL MASON<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ CIVIL ACTION NO. _____ |

## PLAINTIFFS' ORIGINAL COMPLAINT

Kelly Hall and John Crowder, Jr. (collectively, "Plaintiffs"), plaintiffs in the above-numbered and styled cause, file this Original Complaint complaining of Defendants Phenix Investigations, Inc., Carroll Family Investments, Ltd., Wood, Thacker & Weatherly, P.C., Samuel B. Burke, R. William Wood, C. Jane Thacker, Jared Zenth, and Carl Mason (collectively, "Defendants") and would respectfully show the Court as follows:

### I.  JURISDICTION AND VENUE

1. This Court has jurisdiction over this cause of action pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1681 *et seq.*, 15 U.S.C. § 1692 *et seq.*, and 15 U.S.C. § 6821 *et seq.*

2. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2).

### II.  PARTIES

3. Plaintiff Kelly Hall ("Hall") is an individual residing in Dallas County, Texas.

4. Plaintiff John Crowder, Jr. ("Crowder") is an individual residing in Collin County, Texas.

5. Defendant Phenix Investigations, Inc. ("Phenix") is an Indiana for-profit corporation with its principal place of business located at 2555 Fairview Place, Greenwood, Indiana 46142. Phenix may be served with process through its registered agent, Brian K. Bauer, at 2555 Fairview Place, Greenwood, Indiana 46142. At all times relevant to this proceeding, Phenix has transacted business in the state of Texas, and alleges to have investigators located in Dallas, Texas.

6. Defendant Carroll Family Investments, Ltd. ("Carroll") is a Texas limited partnership with its principal place of business located 2340 W. Interstate 20, Suite 100, Arlington, Texas 76017. Carroll may be served with process through its registered agent, Christopher S. Carroll, at 2340 W. Interstate 20, Suite 100, Arlington, Tarrant County, Texas 76017.

7. Defendant Wood, Thacker & Weatherly, P.C. (the "Law Firm") is a Texas professional corporation with its principal place of business located 400 West Oak Street, Suite 310, Denton, Texas 76201. The Law Firm may be served with process through its registered agent, R. William Wood, at 400 West Oak Street, Suite 310, Denton, Denton County, Texas 76201.

8. Defendant R. William Wood ("Wood") is an individual residing in Denton County, Texas. Wood may be served with process at 400 West Oak Street, Suite 310, Denton, Denton County, Texas 76201.

9. Defendant C. Jane Thacker ("Thacker') is an individual residing in Denton County, Texas. Thacker may be served with process at 400 West Oak Street, Suite 310, Denton, Denton County, Texas 76201.

10. Defendant Samuel B. Burke ("Burke") is an individual residing in Denton County, Texas. Burke may be served with process at 1710 Westminster, Denton, Denton County, Texas 76205.

11. Carl Mason ("Mason") is an individual residing in the state of Indiana. Mason may be served with process at 2555 Fairview Place, Greenwood, Indiana 46142, or wherever he may be found.

12. Jared Zenth ("Zenth") is an individual residing in the state of Indiana. Zenth may be served with process at 2555 Fairview Place, Greenwood, Indiana 46142, or wherever he may be found.

### III.   FACTUAL BACKGROUND

13. On or about December 1, 2010, TWI, Inc. ("TWI") and TWI XVIII, Inc. ("TWI/18"), in additional to numerous other entities, entered into an asset sale agreement ("APA") with HOA Holdings, LLC. The transactions contemplated by the APA, as amended, closed in January 2011 (the "Asset Sale"). Crowder was a shareholder of TWI and TWI/18. Hall was not a shareholder of TWI or TWI/18. As part of the Asset Sale, Crowder was deemed to have received distributions of $781,115.00 from TWI and $4,312.00 from TWI/18. Hall received no deemed or actual distributions from either TWI or TWI/18 from the Asset Sale.

14. On or about March 27, 2011, Crowder transferred an amount back to TWI in excess of his deemed distribution from TWI, with Crowder thereby becoming a net transferee to TWI from and after the Asset Sale. Crowder transferred an amount back to TWI/18 in excess of

his deemed distributions from TWI/18 to pay for, among other things, legal fees that TWI/18 incurred, and continues to incur, in defending various lawsuits. Accordingly, Crowder is a net transferee to TWI/18 from and after the Asset Sale.

15. On or about November 21, 2011, after the APA and Asset Sale, Carroll obtained a judgment (the "Judgment") at the trial court level in a Texas court against TWI and TWI/18 (the "Judgment Debtors") in cause number 2009-30008, 2011, 211th Judicial District Court, Denton County Texas, styled *Christopher S. Carroll Number 1, Ltd. vs. TWI XVIII, Inc., and TWI, Inc.* ("Judgment Lawsuit"). The Judgment in favor of Carroll against TWI and TWI/18 was for $869,950.00. The Judgment Lawsuit was appealed by the Judgment Debtors all the way to the Texas Supreme Court, but the Judgment is now final.

16. While the Judgment Lawsuit was working its way through the appellate process, Carroll, represented by the Law Firm, filed suit against TWI, TWI/18, Hall, and Crowder in a separate lawsuit alleging that Hall, Crowder, TWI, TWI/18 and other named defendants received fraudulent transfers from the Judgment Debtors with the actual intent to hinder, delay, or defraud Carroll, despite the fact that Hall was not a shareholder of either of the Judgment Debtors, and Crowder had transferred funds to TWI and TWI/18 in excess of any distributions he was deemed to have (or actually) received therefrom.

17. The lawsuit alleging fraudulent transfers by the Judgment Debtors is cause number 2012-10921-16, 16th Judicial District Court, Denton County, Texas, styled *Carroll Family Investments, Ltd., successor by merger to Christopher S. Carroll Number 1, Ltd., v. Hooters of America, LLC, et al.* ("Transfer Lawsuit").

18. In the Transfer Lawsuit, Carroll, through the Law Firm, requested documents relating to the financial status of Hall and Crowder, including bank records and federal tax

returns ("Financial Records"). Hall and Crowder objected to the production of their Financial Records, especially since no judgment had been rendered against either of them in either the Judgment Lawsuit or Transfer Lawsuit; however, they were ordered to produce their Financial Records in May 2013. Burke represented and agreed during the hearing on the Motion to Compel the Financial Records that Plaintiff did not intend to use the information obtained in discovery for any commercial or other purpose. However, shortly after the Financial Records were produced, upon information and belief, the Financial Records were disseminated by Defendants to Phenix in order to prepare credit reports in violation of Federal law.

19. On or about August 16, 2013, after production of the Financial Records to Carroll, Hall received an email from a vice president of J. P. Morgan Private Bank ("JPM") informing Hall that JPM had received a suspicious call from someone claiming to be Hall. Hall was informed that the caller was requesting the balance of a bank account for which Hall was a signatory, but could only provide Hall's social security number and date of birth. The caller was unable to provide the account number or Hall's banker's name. In addition, Hall was informed that the same caller impersonated Crowder, who is a signatory on a number of accounts that Hall is associated with. The federal tax identification numbers provided by the caller to JPM were for the entities sued in the Transfer Lawsuit. Due to this suspicious activity, JPM blocked online and VRU access and placed fraud notes with respect to those accounts.

20. Crowder was notified of the aforementioned impersonations shortly after Hall. In addition, Crowder received a similar fraud notification from another financial institution, BBVA Compass Bank ("Compass"), that someone was impersonating him in an effort to obtain bank records around this same time period. The accounts whereby Crowder was impersonated at

Compass were accounts that were produced to Carroll as part of the Financial Records for Hall and Crowder in the Transfer Lawsuit.

21.     Unbeknownst to Plaintiffs, Carroll, the Law Firm, Burke, Wood, and/or Thacker, engaged Phenix, a consumer reporting agency as that term is defined by 15 U.S.C. § 1681a(f), to assemble Plaintiffs' financial information for Carroll, the Law Firm, Burke, Wood, and/or Thacker. Phenix produced at least three (3) consumer reports (collectively, the "Consumer Reports"), as that term is defined under 15 U.S.C. § 1681a(d). Those Consumer Reports were dated August 20, 2013 (regarding Kelly Hall, John Crowder and certain entities), September 12, 2013 (regarding Kelly Hall and John Crowder) and October 16, 2013 (regarding Kelly Hall and John Crowder). Alternatively, the Consumer Reports are investigative consumer reports under 15 U.S.C. § 1681d, which were not disclosed to Plaintiffs. The Consumer Reports were not assembled or used for any permissible purpose under 15 U.S.C. § 1681b. Plaintiffs were never informed that Carroll, the Law Firm, Burke, Wood, and/or Thacker engaged Phenix to prepare the Consumer Reports until after they had been prepared and improperly disclosed to third parties. Given the dates of the Consumer Reports, the information in the Consumer Reports, the date that JPM notified Hall of certain impersonation attempts, and the date that Compass notified Crowder of certain impersonation attempts, Plaintiffs believe Phenix, directly or indirectly, was the caller impersonating Crowder and Hall.

22.     Shortly after Carroll, the Law Firm, Burke, Wood, and/or Thacker received at least two (2) of the Consumer Reports, Burke and Thacker had an ex parte and unrecorded meeting with Judge Sherry L. Shipman ("Judge Shipman"), who was presiding over the Transfer Lawsuit, wherein Burke and/or Thacker showed Judge Shipman, and discussed, at least two (2) of the Consumer Reports. Carroll, represented by the Law Firm, was able to obtain an improper

ex-parte temporary restraining order (the "TRO") from Judge Shipman against Hall, Crowder, and even parties that were never served with the Transfer Lawsuit, nor made an appearance in it. Burke suggested to Judge Shipman that, based on one or more of the Consumer Reports, the targets of the TRO likely would not harm Plaintiffs.

23. The ex-parte TRO was signed by Judge Shipman on October 3, 2013. In the TRO, two (2) entities that have never been served with the Transfer Lawsuit and were not part of the Judgment Lawsuit, which have never made an appearance in either lawsuit, Big Wings Holdings, LLC and Big Wings Holdings II, LLC ("BWH Entities"), were restrained from transferring, withdrawing, spending, gifting, or otherwise disposing of any assets. The BWH Entities, along with their financial information, were included in one or more of the Consumer Reports prepared and/or assembled by Phenix.

24. The TRO restrained Hall from disposing of any funds and assets held at BBVA Compass Bank, Wells Fargo, Charles Schwab, Wells Fargo Advisors, and JP Morgan Chase ("Hall Accounts"), all accounts listed in the Consumer Reports. Hall was ordered in the TRO to identify the names of each account owner on every account which is part of the Hall Accounts, provide the current balances of each of the Hall Accounts, and provide documentation showing that the funds in the Hall Accounts could be traced to sources other than the Asset Sale as it related to TWI or TWI/18. All or substantially all of the Hall Accounts are with financial institutions located in Dallas County or Collin County, Texas.

25. The TRO restrained Crowder from disposing of any funds held at BBVA Compass, Chase Bank, and Etrade ("Crowder Accounts"), all accounts listed in the Consumer Reports. Crowder was ordered in the TRO to identify the names of each account owner on every account which is part of the Crowder Accounts, provide the current balances of each of the

Crowder Accounts, and provide documentation showing that the funds in the Crowder Accounts could be traced to sources other than the Asset Sale as it related to TWI or TWI/18. All or substantially all of the Crowder Accounts are with financial institutions located in Dallas County or Collin County, Texas.

26. At the time the TRO was signed by Judge Shipman, Plaintiffs were unaware of the existence of the Consumer Reports since the Consumer Reports had not been disclosed to Plaintiffs, even though the Consumer Reports were used to obtain the TRO against Hall and Crowder. Plaintiffs were not provided with unredacted copies of the Consumer Reports until after two (2) motions to recuse had been filed by Plaintiffs and others in the Transfer Action (which were both overruled). As part of the Second Motion to Recuse, counsel for Hall and Crowder pointed out that Hall and Crowder were the victims of attempted hacking of bank account information by imposters pretending to be Hall and Crowder. The imposters used information relating to TWI and TWI/18, as well as Hall and Crowder's personal information. Despite this knowledge, upon information and belief, none of the Defendants contacted Phenix to determine whether it was the source of the impersonation of Hall and Crowder to various financial institutions.

27. Furthermore, Carroll, the Law Firm, Burke, Wood, and/or Thacker used, or attempted to use, the Consumer Reports to support the granting of a temporary injunction against Hall and Crowder in the Transfer Lawsuit, including when Burke stated that the Consumer Reports allegedly show that the defendants in the Transfer Lawsuit may have attempted to transfer funds. Judge Shipman granted the requested temporary injunction ("Temporary Injunction") against Hall and Crowder in January 2014. The Temporary Injunction is currently being appealed.

28. The TRO and subsequently the Temporary Injunction have been sought by Carroll, the Law Firm, Wood, Burke, and/or Thacker in an attempt to collect an alleged debt for which Hall and Crowder do not owe because the Temporary Injunction relates to the Judgment obtained by Carroll in the Judgment Lawsuit which was only against TWI and TWI/18. However, Plaintiffs have been improperly enjoined based in whole or in part on the Judgment (the "Debt") obtained by Carroll in the Judgment Lawsuit.

## IV. CAUSES OF ACTION

**Count 1 – Willful Violation of the Fair Credit Reporting Act (15 U.S.C. 1681 *et. seq.*)**

29. Plaintiffs incorporate by reference all of the foregoing paragraphs.

30. The Federal Trade Commission ("FTC") has ruled that investigation firms like Phenix, that gather and assemble consumer information are "consumer reporting agencies" for the purposes of the Fair Credit Reporting Act ("FCRA").[1] The FTC has likewise ruled that reports that assemble or gather information on a consumer and "bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" by a consumer reporting agency constitute a consumer report under Section 603(d)(1) of the FCRA.[2] Accordingly, the Consumer Reports prepared by Phenix constitutes "consumer reports" prepared by Phenix acting as a consumer reporting agency. Therefore, the Consumer Reports were required to be used by Defendants only for the permissible purposes set forth in 15 U.S.C. § 1681b(a)(1)-(6), but they were not used for any permissible purpose. Mason is the executive director of Phenix and, upon information and

---

[1] See, *Advisory Opinion to Slyter*, Federal Trade Commission, by Clarke W. Brinckerhoff June 12, 1998, located at www.ftc.gov/policy/advisory-opinions/advisory-opinion-slyter-06-12-98; *Advisory Opinion Letter LeBlanc*, Federal Trade Commission, by William Haynes, Attorney, Division of Credit Practices, June 9, 1998, located at www.ftc.gov/policy/advisory-opinions/advisory-opinion-leblanc-06-09-98.
[2] *Id.*

belief, is the person who prepared and/or supervised the preparation of the Consumer Reports. Zenth is, upon information and belief, the investigator who obtained and/or assisted in obtaining the information contained within the Consumer Reports.

31. The Consumer Reports note that they were prepared by Phenix, Mason, and Zenth for litigation support purposes. Furthermore, the Consumer Reports incorporate "analysis and strategy" section on how to best use the illegal information obtained. In fact, one such "analysis" or "strategy" in the August 20, 2013 report states that certain advanced investigative services can be performed that may discover more information on the subjects, including trash audits, discreet inquiries, activity monitoring, surveillance, and other methods. Clearly the Consumer Reports were prepared by Phenix, Mason, and Zenth without any of the permissible purposes under the FCRA in mind.

32. The Consumer Reports were prepared by assembling financial records of Hall and Crowder from numerous financial institutions located, for the most part, in either Dallas County, Texas or Collin County, Texas. When Hall was contacted by JPM about the impersonations on August 16, 2013, the vice president who was on the call with the impersonator was located in Dallas, Dallas County, Texas.

33. The Consumer Reports were used against Hall and Crowder in the Transfer Lawsuit by Carroll, the Law Firm, Burke, Wood, and/or Thacker to wrongfully obtain, in whole or in part, the TRO and Temporary Injunction regarding the assets of Hall and Crowder. The Consumer Reports were commissioned by the Law Firm, Burke, Wood, and/or Thacker, individually and on behalf of Carroll. The Consumer Reports are addressed to Burke at the Law Firm. Accordingly, all of the Defendants had knowledge of the unlawful circumstances surrounding the improper creation of the Consumer Reports and for what improper purposes the

Consumer Reports would be used by Defendants. However, Defendants willfully failed to comply with the FCRA and proceeded to use the Consumer Reports for "litigation support" rather than any permissible use provided in the FCRA and without notifying Plaintiffs of the creation of the Consumer Reports or their use. At no time prior to the creation of the Consumer Reports or of their use has there been any judgment against Hall or Crowder in either the Judgment Lawsuit or the Transfer Lawsuit.

34. Furthermore, Phenix, Mason, and Zenth provided Plaintiffs' consumer information in the Consumer Reports without determining whether the Law Firm, Carroll, Burke, Wood, and/or Thacker had a permissible purpose to obtain that information pursuant to 15 U.S.C. § 1681b, and in fact knew that no permissible purpose existed, and failed to provide Plaintiffs the Consumer Reports pursuant to 15 U.S.C. § 1681g.

35. As a result of Defendants' willful violation of the FCRA, Plaintiffs have suffered, continue to suffer, and will suffer future damages, including, but not limited to, restriction on them free use of their personal funds, lost business opportunities due to the restriction of their personal funds, worry, distress, frustration, embarrassment, and humiliation due to the reputational damage of the Temporary Injunction and/or TRO.

36. Accordingly, Plaintiffs are entitled to actual damages, statutory damages, punitive damages, and reasonable and necessary attorneys' fees for the Defendants' willful violation of the FCRA pursuant to 15 U.S.C. § 1681n *et. seq*. Plaintiffs are entitled to have a jury determine actual damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o, along with punitive damages.

**Count 2 – Negligent Violation of the Fair Credit Reporting Act (15 U.S.C. 1681 *et. seq.*)**

37. Plaintiffs incorporate by reference all of the foregoing paragraphs.

38. Pleading further and in the alternative, Phenix, Mason, and Zenth acted negligently by obtaining and assembling Plaintiffs' financial information with respect to their personal banking accounts located, for the most part, in Dallas County, Texas and/or Collin County, Texas, without a permissible purpose in obtaining and assembling those records.

39. Phenix, Mason, and Zenth prepared the Consumer Reports on the behalf of Carroll, the Law Firm, Wood, Burke, and/or Thacker. Phenix, Mason, and Zenth acted negligently in failing to determine whether Carroll, the Law Firm, Wood, Burke, and/or Thacker had a permissible purpose to obtain the Consumer Reports pursuant to 15 U.S.C. § 1681b, and in fact knew that no permissible purpose existed.

40. Phenix, Mason, Zenth, Carroll, the Law Firm, Wood, Burke, and/or Thacker acted negligently by failing to notify Plaintiffs that they would be obtaining the Consumer Reports and failing to disclose the Consumer Reports to Plaintiffs pursuant to 15 U.S.C. § 1681g.

41. Carroll, the Law Firm, Wood, Burke, and/or Thacker acted negligently by using the Consumer Reports, obtained in violation of the FCRA, in an ex parte meeting with Judge Shipman in an effort to obtain the TRO against Plaintiffs in the Transfer Lawsuit. The TRO, which was signed by Judge Shipman, was improper and unlawful. Likewise, Carroll, the Law Firm, Wood, Burke, and/or Thacker acted negligently by using or attempting to use the Consumer Reports, obtained in violation of the FCRA, in obtaining the Temporary Injunction; thereby restricting the free use of Plaintiffs' personal funds.

42. As a result of Defendants' negligent violation of the FCRA, Plaintiffs have suffered, continue to suffer, and will suffer future damages, including restriction of the free use of their personal funds, lost business opportunities due to the restriction of their personal funds,

worry, distress, frustration, embarrassment, and humiliation due to the reputational damage of the Temporary Injunction and/or TRO.

43. Plaintiffs are entitled to have a jury determine actual damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o.

**Count 3 – Violation of the Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et. seq.*)**

44. Plaintiffs incorporate by reference all of the foregoing paragraphs.

45. Pleading further and in the alternative, Carroll received the Judgment in the amount of $869,950.00 in the Judgment Lawsuit against TWI and TWI/18 only. In addition, Hall is not a shareholder of either TWI or TWI/18. Crowder, while he is deemed to have received a distribution from TWI and actually received a distribution from TWI/18, is currently a net transferor to both TWI and TWI/18.

46. Despite this fact, Carroll, through the Law Firm, Burke, Wood, and/or Thacker, have secured a Temporary Injunction prohibiting the free transfer of Plaintiffs personal funds based on the false representation of the character, amount, or legal status of any alleged debts of Plaintiffs in violation of 15 U.S.C. 1692e(2)(A). Hall did not receive any funds from TWI or TWI/18 and therefore cannot be a transferee as alleged in the Transfer Lawsuit. Despite this fact, Carroll, through the Law Firm, Burke, Wood, and/or Thacker have pursued and continue to pursue the collection of the Debt in the Transfer Lawsuit from Hall, alleging he is somehow liable for the debts of TWI and TWI/18.

47. Likewise, while Crowder was deemed to have received distributions from TWI and TWI/18, all such distributions (and more) were transferred back to those entities. In the case of TWI, Crowder transferred an amount in excess of what was deemed to have been distributed to him prior to the Judgment in the Judgment Lawsuit. In the case of TWI/18, Crowder

transferred an amount in excess of what was deemed distributed to him while the Judgment in the Judgment Lawsuit was on appeal. Accordingly, Crowder is a net transferee to TWI and TWI/18 from and after the Asset Sale. Despite this fact, Carroll, through the Law Firm, Burke, Wood, and/or Thacker, have pursued and continue to pursue the collection of the Debt in the Transfer Lawsuit from Crowder, alleging he is somehow liable for the debts of TWI and TWI/18.

48. Furthermore, Phenix, Mason, and Zenth has violated 15 U.S.C. 1692e(10) by making false representations or using deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. Just days prior to the issuance of the August 20, 2013 Phenix consumer report, Hall and Crowder's financial institutions received calls from persons impersonating Hall and Crowder in relation to accounts located in Dallas County and Collin County, Texas ("Northern District Financial Institutions").

49. The imposter, pretending to be Hall and Crowder, used tax identification numbers for the entities sued in the Transfer Lawsuit and knew which financial institutions to call and some of the accounts that Hall and Crowder (in addition to entities owned by Hall and Crowder) used at such financial institutions. The suspicious circumstances surrounding the imposter calls, the information provided by the imposter, and the issuance of the Consumer Reports shortly thereafter, which included account balances and other information for the Northern District Financial Institutions that were subject to the imposter calls, leads Plaintiffs to believe that Phenix, Mason, and/or Zenth, either directly or indirectly, were the source of the imposter calls.

50. Carroll, the Law Firm, Burke, Wood, and/or Thacker benefited from the imposter calls in an attempt to collect the Debt in the Judgment Lawsuit from Hall and Crowder in the

Transfer Lawsuit. The Debt presumably has been subsumed within the $1.5 million restriction in the Temporary Injunction against Hall and Crowder.

51.     The actions by Defendants have caused Plaintiffs to suffer damages, including the restriction of free use of Plaintiffs' personal funds, lost business opportunities due to the restriction of their personal funds, worry, distress, frustration, embarrassment, and humiliation due to the reputational damage of the Temporary Injunction and/or TRO.  Further, Hall and Crowder continue to incur legal expenses in defending their alleged liability for the Debt arising from the Judgment Lawsuit.

52.     Accordingly, Plaintiffs are entitled to actual damages, statutory damages, and reasonable and necessary attorneys' fees pursuant to 15 U.S.C. § 1692k for the Defendants' violation of the Fair Debt Collection Practices Act.

**Count 4 – Violation of the Gramm-Leach-Bliley Act (15 U.S.C. 6821 *et. seq.*)**

53.     Plaintiffs incorporate by reference all of the foregoing paragraphs.

54.     The Gramm-Leach-Bliley Act ("GLBA") prohibits an person from obtaining, or attempting to obtain, or cause to be disclosed or attempt to cause to be disclosed to any person, customer information of a financial intuition relating to another person by:

   a. making a false, fictitious, or fraudulent statement or representation to an officer, employee, or agent of a financial intuition;

   b. making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution; or

   c. providing any document to an officer, employee, or agent of a financial institution, knowing that the document is forged, counterfeit, lost, or stolen,

was fraudulently obtained, or contains false, fictitious, or fraudulent statement or representation.[3]

55. The GLBA also prohibits the solicitation of a person to obtain customer information from any financial institution under false pretenses or to request a person to obtain customer information from any financial institution, knowing that the person will obtain, or attempt to obtain, the information form the institution in any manner described in paragraph 54(a)-(c) of this Original Complaint.[4]

56. Phenix, Mason, and Zenth, at the request of Carroll, the Law Firm, Burke, Wood, and/or Thacker, gathered Hall's and Crowder's personal banking information and assembled them into the Consumer Reports. Gathering and listing personal banking information, no matter how few, would appear to any reasonably prudent person to be a clear violation of Federal law.[5] In fact, the FTC has brought numerous actions against entities such as Phenix for the very types of actions that Phenix advertises for on its website, including obtaining banking records.[6]

57. In addition, as outlined above, due to the proximity of the issuance of the Consumer Reports and the circumstances surrounding the imposter calls to one or more of the Northern District Financial Institutions, it is believed by Plaintiffs that Phenix, Mason, and/or Zenth, either director or indirectly, were behind the imposter calls. Certainly Phenix, Mason, and Zenth prepared the Consumer Reports detailing Plaintiffs' personal banking information and disseminated that information to Carroll, the Law Firm, Burke, Wood, and/or Thacker. Carroll, the Law Firm, Burke, Wood, and/or Thacker then disseminated Plaintiffs' personal banking

---

[3] 15 U.S.C. § 6821(a)(1)-(3)
[4] 15 U.S.C. § 6821(b)
[5] *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109 (N.D.N.Y. 2007) (Relying on 15 U.S.C. § 6821 in holding that assembling a report with banking information by a private investigation firm likely violates federal law. *Id.* at 133).
[6] See, *F.T.C. v. Guzzetta*, Civil Action No. CV 01 2335 (E.D.N.Y); *F.T.C. v. Information Search, Inc.*, Civil Action No. AMD-01-1121 (D. Md.); *F.T.C. v. Garrett*, Civil Action No. H 01 122 (S.D. Tex.) (all complaints filed alleging that defendants violated the GLBA by using fraud and misrepresentation to obtain information about individuals which was then sold).

information in one or more of the Consumer Reports to Judge Shipmen. Accordingly, the Consumer Reports were used in obtaining the TRO against Plaintiffs and also used or attempted to be used in obtaining a Temporary Injunction against Plaintiffs in the Transfer Lawsuit.

58. The August 16, 2013 imposter calls were disclosed in a Second Motion to Recuse that was filed in the Transfer Lawsuit. Despite the concerns raised by Plaintiffs on or about October 21, 2013, in the Transfer Lawsuit regarding those imposter calls, Wood testified on December 16, 2013, that he had not contacted Phenix to determine (assuming he did not already know) if Phenix, Mason, and/or Zenth were the source of the imposter calls.

59. Due to Defendants' violation of the GLBA, Plaintiffs have suffered, continue to suffer, and will likely suffer damages in the future. As previously noted, one or more of the Northern District Financial Institutions had or have fraud alerts placed on those accounts and access was restricted with respect to certain accounts used by Hall and/or Crowder. Furthermore, due to the Temporary Injunction, Hall and/or Crowder are restricted with respect to their bank accounts in the Northern District Financial Institutions leaving substantial personal funds (over a million dollars) exposed in compromised accounts that have been subject to pretexting in violation of the GLBA.

**Count 5 – Abuse of Process**

60. Plaintiffs incorporate by reference all of the foregoing paragraphs.

61. This Court has pendent jurisdiction over Plaintiffs' Texas state cause of action for abuse of process because the state claim has a common nucleus of operative fact and would ordinarily be expected to be tried as one judicial proceeding with the Federal claims asserted herein. Plaintiffs' claim for abuse of process involves substantially the same parties and the same facts as their claims in counts 1 – 4 of this Original Complaint.

62. Carroll brought the Transfer Lawsuit alleging that Hall and Crowder allegedly received funds form TWI and/or TWI/18. However, the Transfer Lawsuit was brought with the ulterior motive of obtaining Hall and Crowder's personal banking information without any permissible purpose. The TRO obtained by Carroll pursuant to ex parte communications (including showing some of the Consumer Reports to Judge Shipman) actually ordered Plaintiffs to name each account owned by Plaintiffs, inform Carroll of the balance in and account number for each account, and provide documentation showing that any funds therein can be traced to a source other than the Asset Sale.

63. In fact, Carroll, through the Law Firm, Burke, Wood, and/or Thacker, used the Financial Records obtained in the Transfer Lawsuit to then disseminate those records to Phenix, Mason, and/or Zenth for the purposes of "litigation support." Thereafter, the very account information obtained by Carroll became the subject of imposter calls and other compromising activities with respect to Hall and Crowder.

64. Furthermore, Burke has testified that the purpose of the Transfer Lawsuit was an attempt to collect the Debt from Hall and Crowder even though Hall received no funds from either TWI or TWI/18 and Crowder was a net transferee to both TWI and TWI/18. Between the activities that compromised the financial accounts of Hall and Crowder, and the thinly veiled fact that the Transfer Lawsuit is just a ruse to obtain funds to pay the Judgment from individuals who were not party to the Judgment Lawsuit; it is abundantly clear that Carroll, the Law Firm, Burke, Wood, and/or Thacker have abused the process of the legal system.

65. Derivative of Plaintiffs' abuse of process claim is Plaintiffs' claim for civil conspiracy. Defendants, acting in concert and with a meeting of the minds, conspired to obtain the TRO and the Temporary Injunction through an abuse of the legal process causing damages to

Plaintiffs as a proximate result of Defendants' conspiracy. Upon information and belief, Defendants knew there would be an actual harm to Plaintiffs caused by their abuse of process because Defendants knew Plaintiffs would incur legal fees and costs in defense of the Transfer Lawsuit.

66. Defendants further abused the legal process by seeking and obtaining the TRO and Temporary Injunction. By obtaining the TRO and Temporary Injunction, not only have Defendants restricted the free use of Plaintiffs' personal funds, but also by have caused, and continue to cause Plaintiffs to incur attorney's fees and costs in defense of Plaintiffs' abuse of process and appeal of the Temporary Injunction. Defendants' conspiracy is further compounded because Defendants, through the abuse of process in the Transfer Lawsuit, are attempting to collect the Debt utilizing improper and unlawful means, especially since Plaintiffs are not liable for the Debt.

67. The actions by Defendants have cause Plaintiffs to suffer damages, including the restriction of free use of Plaintiffs' personal funds, lost business opportunities due to the restriction of their personal funds, worry, distress, frustration, embarrassment, and humiliation due to the reputational damage of the Temporary Injunction and TRO. Further, Hall and Crowder continue to incur legal expenses in defending the Transfer Lawsuit as an attempt to collect the Debt in the Judgment Lawsuit.

## **CONDITIONS PRECEDENT**

68. All prior and subsequent paragraphs are incorporated herein at this point by reference. All conditions precedent to Plaintiffs' recovery have been performed, satisfied, excused, and/or waived.

## **JURY DEMAND**

69.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

## V.     **PRAYER**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully request that Defendants be cited to appear and answer herein, and that upon final trial of this cause, Plaintiffs recovers the following from Defendants:

(1) actual damages;

(2) in the alternative to (1), statutory damages;

(3) punitive damages;

(4) reasonable and necessary attorneys' fees;

(5) costs of Court;

(6) pre-judgment interest and post-judgment interest on such sums; and

(7) such other and further relief, legal or equitable, to which Plaintiffs may be justly entitled.

Respectfully submitted,

**WOLF & HENDERSON, P.C.**

s/ William L. Wolf_____
William L. Wolf
   State Bar No. 21854500
bwolf@wolf-law.com
Christopher K. Chapaneri
   State Bar No. 24065032
cchapaneri@wolf-law.com
4309 Irving Avenue, Suite 200
Dallas, Texas 75219
(214) 750-1395 (telephone)
(214) 368-1395 (facsimile)
ATTORNEYS FOR PLAINTIFFS KELLY HALL AND JOHN CROWDER, JR.