IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KELLY HALL, et al.,                          §
                                             §
                    Plaintiffs,              §
                                             § Civil Action No. 3:14-CV-0665-D
VS.                                          §
                                             §
PHENIX INVESTIGATIONS, INC., et al.,         §
                                             §
                    Defendants.              §

MEMORANDUM OPINION
AND ORDER

        Defendants move to dismiss under Fed. R. Civ. P. 12(b)(1), 12(b)(2), and/or 12(b)(6),

presenting issues of subject matter jurisdiction based on the *Rooker-Feldman* doctrine, *in

personam* jurisdiction, and whether plaintiffs have stated federal-law claims on which relief

can be granted.  For the reasons explained, the court denies the jurisdictional challenges,

grants the motions to dismiss under Rule 12(b)(6) for failure to state any federal-law claims

on which relief can be granted, declines to exercise supplemental jurisdiction over plaintiffs'

state-law claims, and grants plaintiffs leave to replead.

                                            I

        This is an action by plaintiffs Kelly Hall ("Hall") and John Crowder, Jr. ("Crowder")

against defendants Phenix Investigations, Inc. ("Phenix") and Carroll Family Investments,

Ltd. ("Carroll"), and Wood, Thacker & Weatherly, P.C. ("Wood, Thacker"), Samuel B.

Burke, R. William Wood, C. Jane Thacker, Jared Zenth, and Carl Mason (collectively,

"WTW").  Hall and Crowder assert claims under the Fair Credit Reporting Act ("FCRA"),

15 U.S.C. § 1681 *et seq.*; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.

§ 1692 *et seq.*; the Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. § 6801 *et seq.*; and Texas

law.

The instant lawsuit arises from two prior suits. According to plaintiffs,[1] Christopher

S. Carroll No. 1, Ltd. ("CSC1") obtained a judgment against TWI, Inc. and TWI XVIII, Inc.

in Texas state court. Carroll then filed suit in Texas state court (the "Transfer Lawsuit")

against TWI, Inc., TWI XVIII, Inc., Hall, and Crowder, among others, alleging that Hall and

Crowder had received fraudulent transfers from TWI, Inc., and TWI XVIII, Inc., and that

Hall and Crowder were attempting to hinder Carroll's efforts to enforce CSC1's judgment.

During the Transfer Lawsuit, Carroll (represented by Wood, Thacker) moved to compel the

production of Hall's and Crowder's financial records, and the state court ordered them to

---

[1]In deciding the Rule 12(b)(6) motion, the court construes plaintiffs' amended complaint in the light most favorable to them, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in plaintiffs' favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

A Rule 12(b)(1) motion can mount either a facial or factual challenge. *See, e.g., Hunter v. Branch Banking & Trust Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)). When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Id.* The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion." *Id.* at *2 (citation omitted) (citing *Paterson*, 644 F.2d at 523).

produce the records.

Hall and Crowder allege that, after they produced their financial records in the Transfer Lawsuit, unidentified individuals placed telephone calls to two banks at which Hall and Crowder maintain accounts, and, during these calls, impersonated them in order to obtain their private financial information.  Hall and Crowder also assert that Carroll and WTW hired Phenix to investigate their financial holdings; that, shortly after the fraudulent telephone calls occurred, Phenix produced three investigative reports ("the Reports") detailing its findings; and that Phenix made these calls on behalf of Carroll and WTW.

Based on the alleged participation of Carroll, WTW, and Phenix in a scheme to fraudulently obtain and improperly use plaintiffs' financial records, Hall and Crowder sue defendants, alleging that they violated FCRA, FDCPA, GLBA, and Texas law.  Phenix moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and under Rule 12(b)(2) for lack of personal jurisdiction.  Phenix, Carroll, and WTW move to dismiss under Rule 12(b)(6) for failure to state a claim on which relief can be granted.  Hall and Crowder oppose the motions.[2]

---

[2]Plaintiffs also seek discovery in opposition to Phenix's jurisdictional challenge. Because the court is denying Phenix's Rule 12(b)(2) motion, the request for discovery is denied as moot.

II

The court first considers Phenix's motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction.[3]

A

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

Phenix contends that the *Rooker-Feldman* doctrine precludes this court from exercising subject matter jurisdiction. It maintains that the instant suit is plaintiffs' back-door attempt to challenge the state court's adverse discovery ruling in the Transfer Lawsuit.[4]

---

[3]*See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.").

[4]Although Phenix entitles its motion as a "Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1), (2), (6)," the only argument supporting dismissal for lack of subject matter jurisdiction is contained in a footnote. Phenix appears to predicate its Rule 12(b)(1) motion both on *res judicata* and the *Rooker-Feldman* doctrine, although its arguments with respect to both doctrines are unclear. The court concludes that neither *Rooker-Feldman* nor *res judicata* or collateral estoppel supports dismissing this lawsuit.

- 4 -

B

The *Rooker-Feldman* doctrine "precludes a United States district court from exercising subject-matter jurisdiction in an action" where "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005). The rationale that underlies *Rooker-Feldman* is that a district court lacks jurisdiction to hear an appeal of a state case. *See id.* at 284-85. The Supreme Court is the only federal court with "appellate authority 'to reverse or modify' a state-court judgment." *Id.* at 284 (quoting *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923)).

Where the federal case was filed *before* the state proceedings ended, the existence of the state case does not strip the federal court of subject matter jurisdiction. *See id.* at 292 ("[N]either *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court."). Rather, if the state adjudication finishes before the federal adjudication, then preclusion principles, which are not jurisdictional, govern. *See id.* at 293. The Transfer Lawsuit was filed in Texas state court in 2012, and a final judgment has not yet been entered. Plaintiffs filed the instant suit in 2014. Because plaintiffs filed this lawsuit before the Transfer Lawsuit concluded, the *Rooker-Feldman* doctrine is inapplicable. And because there has been no final judgment in the Transfer Lawsuit, preclusion principles are also inapposite. Moreover, the instant case is not one in

- 5 -

which Hall and Crowder are seeking review and rejection of a judgment in the Transfer Lawsuit.

Accordingly the court denies Phenix's motion to dismiss for lack of subject matter jurisdiction.

III

The court now turns to Phenix's Rule 12(b)(2) motion to dismiss for lack of *in personam* jurisdiction.

A

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff[s] bear[] the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). The determination whether a federal district court has *in personam* jurisdiction over a nonresident defendant is bipartite. The court first decides whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant. If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). Because the Texas long-arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over Phenix would be consistent with the Due Process Clause of the Fourteenth Amendment. *See id.*; *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

- 6 -

> The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." To comport with due process, the defendant's conduct in connection with the forum state must be such that he "should reasonably anticipate being haled into court" in the forum state.

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes omitted).  To determine whether exercising jurisdiction would satisfy traditional notions of fair play and substantial justice, the court examines (1) the defendant's burden, (2) the forum state's interests, (3) the plaintiffs' interests in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the states' shared interest in fundamental social policies.  *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).

A defendant's contacts with the forum may support either specific or general jurisdiction over the defendant.  *Mink*, 190 F.3d at 336.  "For the court properly to assert specific personal jurisdiction, the defendant must have 'purposefully directed' his activities at residents of the forum, and the litigation must result from alleged injuries that 'arise out of or relate to' the defendant's activities directed at the forum."  *Archer & White, Inc. v. Tishler*, 2003 WL 22456806, at *2 (N.D. Tex. Oct. 23, 2003) (Fitzwater, J.) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).  "General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and

systematic.'"  *Mink*, 190 F.3d at 336 (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir.

1994)).  Hall and Crowder allege that the court has both general and specific jurisdiction over

Phenix.  The court need only decide, however, whether it has specific jurisdiction.

B

The court is deciding Phenix's Rule 12(b)(2) motion to dismiss without holding an

evidentiary hearing.

> When a court rules on a motion to dismiss for lack of personal
> jurisdiction without holding an evidentiary hearing, it must
> accept as true the uncontroverted allegations in the complaint
> and resolve in favor of the plaintiff any factual conflicts posed
> by the affidavits.  Therefore, in a no-hearing situation, a plaintiff
> satisfies his burden by presenting a *prima facie* case for personal
> jurisdiction.

*Latshaw*, 167 F.3d at 211 (footnotes omitted).  The question thus presented is whether,

applying the controlling procedure stated above, Hall and Crowder have made a prima facie

showing (1) that Phenix purposefully directed its activities at them in the forum state of

Texas, and (2) that this litigation results from alleged injuries that arise out of or relate to

Phenix's activities directed at the forum.

In their amended complaint, Hall and Crowder allege, in pertinent part, that Phenix

violated FCRA by preparing the Reports without any permissible FCRA purpose, Am.

Compl. ¶ 36; that the Reports were prepared by assembling financial records of Hall and

Crowder from numerous financial institutions located mostly in Dallas County or Collin

County, Texas, *id.* at ¶ 37; that the Reports were used against Hall and Crowder in the

Transfer Lawsuit to wrongfully obtain injunctive relief, and all the defendants (i.e., including

Phenix) knew of the unlawful circumstances surrounding the improper creation of the Reports and for what improper purposes the Reports would be used by defendants, *id.* at ¶ 38; and that their FCRA claim results from alleged injuries that arise out of or relate to Phenix's activities directed at the forum, *see id.* (alleging that Reports were used against Hall and Crowder in Transfer Lawsuit to wrongfully obtain injunctive relief) and ¶ 40 (alleging that Hall and Crowder have suffered damages due to defendants' willful violation of FCRA). These allegations are supported by assertions found elsewhere in the amended complaint. For example, the amended complaint alleges that Phenix provides litigation support services, *see id.* at ¶ 35, and that the Reports were prepared for such litigation support services, *id.* at ¶ 36, which would support a prima facie showing that Phenix prepared the Reports with the intention that they be used against Hall and Crowder in Texas, for an improper purpose under FCRA.

In support of Phenix's motion to dismiss, it relies on the declaration of Brian Bauer ("Bauer"), its President, who makes the following two pertinent assertions:

> 5.      With respect to its work related to Plaintiffs, Phenix was contacted in Indiana by the Texas attorney defendants (attorney Samuel Burke) and agreed to perform services for them in Indiana, not in Texas.  In fact, all of Phenix['s] work related to plaintiffs was performed in Indiana, and none was performed in Texas.  No Phenix employee ever traveled to or did anything in Texas in connection with Plaintiffs.  Phenix's agreement with the Texas attorneys also provided Indiana as the exclusive forum for the resolution of any related disputes, which would be also governed by Indiana law.

> 6.      Phenix never agreed at anytime, anywhere, by any means, to enter into any supposed "conspiracy" as claimed by

> Plaintiffs.  Phenix also never made phone calls to any Texas
> banks at any time regarding Plaintiffs.

Phenix 5/8/2014 App. 4-5.  But these assertions (and others that the court does not quote) do

not controvert Hall and Crowder's prima facie showing that Phenix purposefully directed its

activities at them in the forum state of Texas, and that the instant litigation results from

alleged injuries that arise out of or relate to Phenix's activities directed at the forum.  This

is so because, even assuming that Phenix performed its services and work within the state of

Indiana, neither paragraph controverts the allegations of the amended complaint that Phenix

directed these activities toward Hall and Crowder in the state of Texas—that is, they do not

controvert the allegations that the Reports were used against Hall and Crowder in the

Transfer Lawsuit to wrongfully obtain injunctive relief, and that all the defendants (i.e.,

including Phenix) knew of the unlawful circumstances surrounding the improper creation of

the Reports and for what improper purposes the Reports would be used.[5]  Nor does the Bauer

declaration refute the prima facie showing that this lawsuit results from alleged injuries to

Hall and Crowder that arise out of or relate to Phenix's activities directed at the forum state

of Texas.[6]

---

[5]It is immaterial that the court concludes below that Hall and Crowder have failed to state a FCRA claim on which relief can be granted.  *In personam* jurisdiction does not turn on the substantive merits of their FCRA claim.

[6]In reply to plaintiffs' response, Phenix objects to some of the evidence on which Hall and Crowder rely, and it asserts evidentiary objections in a separate filing.  The court need not resolve these objections.  What is controlling here are the uncontroverted allegations of the amended complaint.  Accepted as true, and resolving in favor of plaintiffs any factual conflicts posed by the affidavits, the court holds that Hall and Crowder have made a *prima*

"A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Lewis v. Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001) (citing *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332-33 (5th Cir. 1982)). "The number of contacts with the forum state is not, by itself, determinative. What is more significant is whether the contacts suggest that the nonresident defendant purposefully availed himself of the benefits of the forum state." *Brown*, 688 F.2d at 333 (citing *Quasha v. Shale Dev. Corp.*, 667 F.2d 483, 488 (5th Cir. 1982); *Prod. Promotions, Inc. v. Cousteau*, 495 F.2d 483, 495 (5th Cir. 1974)) (internal citations and footnotes omitted). The court holds that Hall and Crowder have made a prima facie showing that Phenix purposefully availed itself of the benefits of the forum state of Texas by directing toward Hall and Crowder, in the state of Texas, Reports that were used against them in the Transfer Lawsuit to wrongfully obtain injunctive relief, knowing the unlawful circumstances surrounding the improper creation of the Reports and for what improper purposes the Reports would be used. Where "intentional conduct is intended to cause injury in a specific state, that is sufficient to give specific jurisdiction to the courts of that state." *Kwik-Kopy Corp. v. Byers*, 37 Fed. Appx. 90, 2002 WL 1021889, at *6 (5th Cir. 2002) (citing *Calder v. Jones*, 465 U.S. 783, 791 (1984)).

---

*facie* case for personal jurisdiction.

- 11 -

C

The court next considers whether exercising specific jurisdiction satisfies traditional notions of fair play and substantial justice.

Phenix does not attempt to demonstrate that the exercise of jurisdiction in this case would offend such notions, relying instead only on the absence of sufficient minimum contacts to establish specific jurisdiction. Phenix certainly has not made a compelling case that other considerations render jurisdiction unreasonable. Although Phenix is an Indiana corporation, there is no indication that it will suffer any undue burden. Texas has an interest in protecting persons located here from being subjected to unlawful debt collection practices and fraudulent credit reporting actions and in providing a remedy for tortious actions directed to the state. Plaintiffs have an interest in obtaining convenient and effective relief in the state where they allegedly suffered damages. The judicial system's interest in efficient resolutions of controversies, and the states' shared interest in fundamental social policies, neither support nor undercut the exercise of jurisdiction here. The court therefore holds that the exercise of personal jurisdiction over Phenix comports with traditional notions of fair play and substantial justice.

Accordingly, the court denies Phenix's motion to dismiss for lack of personal jurisdiction.

IV

Phenix, Carroll, and WTW each move to dismiss plaintiffs' claims under Rule 12(b)(6) for failure to state a claim on which relief can be granted.  Because defendants' motions rest on substantially the same grounds, the court considers them together.

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiffs' amended complaint by 'accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and alteration omitted)).  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted).  "Threadbare recitals of the elements of a

- 13 -

cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

## V

The court turns first to plaintiffs' FCRA claims.

## A

The purpose of FCRA is to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C § 1681(b). "[FCRA] imposes civil liability on any 'person' (which includes any corporation or other entity who willfully or negligently fails to 'comply with any requirement imposed' under the Act." *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003) (internal citations omitted) (quoting 15 U.S.C. §§ 1681n, 1681o).

Plaintiffs allege that defendants violated § 1681b by assembling and using the Reports for an impermissible purpose, and violated § 1681d by failing to disclose that an investigative consumer report would be made. Defendants contend, *inter alia*, that plaintiffs have failed to state a FCRA claim because they have failed to allege there was a "consumer report," as defined by FCRA.

## B

To state a claim under § 1681b or § 1681d, plaintiffs must allege that defendants created, used, or obtained a "consumer report," as that term is defined by FCRA. *See* 15 U.S.C. §§ 1681b(a), 1681d(a); *see also Norman v. Lyons*, 2013 WL 655058, at *2 (N.D. Tex.

Feb. 22, 2013) (Boyle, J.) (holding that to state claim under § 1681b, plaintiff must allege that there was consumer report).

FCRA defines "consumer report" as

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).  Section 1681b includes such purposes as employment purposes, underwriting insurance involving the consumer, using the information to determine a consumer's eligibility for a license, etc.  *Id.* § 1681b(a)(3).  A report containing credit information about an individual is treated as a "consumer report" only when it is collected for one of the purposes described in § 1681a(d).  *See St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881, 885 (5th Cir. 1989) ("[T]he purpose for which the information was collected governs whether that report is a 'consumer report' under the FCRA.").

Hall and Crowder allege that defendants either created or commissioned the creation of the Reports for "litigation support purposes."  Am. Compl. ¶ 36.  This is not one of the purposes outlined in § 1681a(d) or § 1681b.  Nowhere in the amended complaint do plaintiffs allege that the Reports were created for any of the purposes outlined in § 1681a or § 1681b.  Accordingly, plaintiffs' claims under FCRA fail as a matter of law.

Plaintiffs cite *St. Paul* to argue that, because defendants have focused on the *use* to which they put the Reports, rather than on the *purpose* for which they commissioned the Reports, defendants' argument fails. Despite defendants' reliance on the word "use" in their motions to dismiss, it is clear that their focus is also on the *purpose* for which the Reports were obtained. *See* WTW Mot. to Dismiss ¶ 34 ("Plaintiffs fail to allege that the WTW Lawyers used or expected to use the alleged reports for the *purpose* of establishing Plaintiffs' eligibility for credit, employment, insurance, or *similar purposes*.") (emphasis added). And plaintiffs have failed to allege that the Reports were created for any of the purposes necessary to qualify as a "consumer report" under FCRA.[7]

The court therefore dismisses plaintiffs' FCRA claims against defendants under Rule 12(b)(6).

---

[7]In fact, *St. Paul* lends support for the court's holding. In *St. Paul* an insured counterclaimed against his homeowner's insurance company alleging that, during the investigation of his claim, the company violated FCRA by misusing a preexisting credit report. *St. Paul*, 884 F.2d at 882. The insurer defended on the ground that, because it did not use the credit report for any of the enumerated purposes in § 1681a(d), the credit report was not a "consumer report" under FCRA. *Id.* at 883. The Fifth Circuit pointed out that it is the purpose for which the information contained in the report is collected, rather than its ultimate use, that controls whether it is deemed a "consumer report" under FCRA. The court held that, because the credit report was a preexisting report created for one of the enumerated purposes under § 1681a(d) and that the insurer merely used to investigate the insured's claim, it was a "consumer report." *Id.* at 884. Conversely, the Reports at issue here were not preexisting credit reports, but were commissioned by WTW and Carroll for purposes of litigation support, as plaintiffs allege. *See* Am. Compl. ¶ 36. Thus they are not "consumer reports," as defined by FCRA, and do not provide a basis for plaintiffs' claims under the Act.

VI

Defendants also move to dismiss plaintiffs' FDCPA claims.

A

"The purpose of the [FDCPA] is to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *McMurray v. ProCollect, Inc.*, 687 F.3d 665, 668 (5th Cir. 2012) (quoting 15 U.S.C. § 1692(e)).

> To prevail on [their] FDCPA claim, [plaintiffs] must prove the following: (1) [they have] been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.

*Hunsinger v. SKO Brenner Am., Inc.*, 2014 WL 1462443, *3 (N.D. Tex. Apr. 15, 2014) (Fitzwater, C.J.) (alterations omitted) (quoting *Browne v. Portfolio Recovery Assocs., Inc.*, 2013 WL 871966, at *4 (S.D. Tex. Mar. 7, 2013).

Plaintiffs allege that WTW and Carroll violated FDCPA by falsely representing the character, amount, or legal status of any alleged debts to secure a state-court temporary injunction precluding the free transfer of plaintiffs' personal funds.  They also aver that Phenix violated FDCPA by making false representations or using deceptive means to collect or attempt to collect any debt (namely, that Phenix impersonated plaintiffs in making telephone calls to obtain account information from plaintiffs' financial institutions).  WTW moves to dismiss, contending that an attorney's pursuit of a lawsuit on behalf of a client is

- 17 -

not a violation of FDCPA as a matter of law.  Carroll moves to dismiss plaintiffs' FDCPA claims on the ground that Carroll's pursuit of a debt collection lawsuit is not a violation of FDCPA as a matter of law.  Phenix moves to dismiss on the grounds that plaintiffs have failed to allege that Phenix is a statutory debt collector under FDCPA, and have failed to allege a consumer debt, as required to bring an action under FDCPA.

B

Because the court concludes that plaintiffs have failed to allege the existence of a consumer debt, as required to state a claim under FDCPA, the court need not consider the remaining grounds on which defendants rely.  FDCPA defines "debt" or "consumer debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes[.]"  15 U.S.C. § 1692a(5).  "FCRA does not apply to reports used in a consumer's business transactions, even those involving the consumer's personal credit information."  *Matise v. Trans Union Corp.*, 1998 WL 872511, *2 (N.D. Tex. Nov. 30, 1998) (Fitzwater, J.) (citing *Yeager v. TRW, Inc.*, 961 F. Supp. 161, 162 (E.D. Tex. 1997)).  Therefore, to state a claim under FDCPA, plaintiffs must allege that the debt at issue arose out of a transaction primarily for personal, family, or household purposes.  Plaintiffs have not done so.

The alleged debt at issue arose from the lawsuit filed by CSC1 against TWI, Inc. and TWI XVIII, Inc.  Although the amended complaint is not clear in this respect, plaintiffs appear to allege that the first state-court lawsuit dealt with some kind of business-related sale

of assets.  But the amended complaint is devoid of any allegation that the debt at issue arose

from transactions related primarily to personal, family, or household purposes.  In fact, even

viewing the allegations of the amended complaint in the light most favorable to plaintiffs, the

only reasonable inference the court can draw is that the debt at issue is not primarily for

personal, family, or household purposes.

Therefore, the court grants defendants' motions in this respect and dismisses

plaintiffs' FDCPA claims under Rule 12(b)(6).

VII

Defendants also move to dismiss plaintiffs' GLBA claims.

A

GLBA provides that it is illegal for any person to obtain or attempt to obtain the

financial information of another person through fraud.  *See* 15 U.S.C. § 6821(a).  Defendants

contend that plaintiffs' GLBA claims must be dismissed because GLBA does not provide a

private right of action.  Plaintiffs respond that there is no provision in GLBA that specifically

precludes a private right of action.

B

"The touchstone for determining whether there is an implied private right of action

is Congressional intent, which is best determined by the text of the provision at issue."  *Price

v. Am.'s Servicing Co.*, 2013 WL 1914939, at *3 (N.D. Tex. May 9, 2013) (Fitzwater, C.J.)

(citing *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001)).  The text of GLBA indicates

that Congress likely did not intend to afford a private right of action for violations of this law.

- 19 -

Section 6822 provides that, "[e]xcept as provided in subsection (b) of this section, compliance with this subchapter shall be enforced by the Federal Trade Commission[.]" 15 U.S.C. § 6822(a). Subsection (b) permits enforcement by other agencies, but nowhere provides that private plaintiffs can pursue relief. *See id.* § 6822(b). Section 6823 provides a criminal penalty for violations of GLBA, and § 6805 provides that "the Bureau of Consumer Financial Protection, the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission" shall enforce subchapter I of GLBA. *See id.* §§ 6823, 6805. Considering that Congress expressly provided for administrative and criminal enforcement of GLBA, "it is highly improbable that 'Congress absentmindedly forgot to mention an intended private action.'" *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 20 (1979) (quoting *Cannon v. Univ. of Chi.*, 441 U.S. 677, 742 (1979) (Powell, J., dissenting)) (holding that where Congress expressly provided for administrative and criminal remedies, court would not imply private right of action). The court holds that GLBA does not create a private right of action. *See Borinski v. Williamson*, 2004 WL 433746, at *3 (N.D. Tex. Mar. 1, 2004) (Boyle, J.) (holding that GLBA does not provide private right of action); *Lacerte Software Corp. v. Prof'l Tax Servs., L.L.C.*, 2004 WL 180321, at *2 (N.D. Tex. Jan. 6, 2004) (Sanders, J.) (same); *Dunmire v. Morgan Stanley DW, Inc.*, 475 F.3d 956, 960 (8th Cir. 2007) (same); *Menton v. Experian Corp.*, 2003 WL 21692820, at *3 (S.D.N.Y. July 21, 2003) (same).

Accordingly, the court grants defendants' motions to dismiss plaintiffs' GLBA claims.

VIII

Plaintiffs also assert state-law claims for abuse of process, invasion of privacy, negligence per se, and civil conspiracy. The court declines to address the merits of plaintiffs' pendent state-law claims at this time. Although this court can exercise supplemental jurisdiction over these state-law claims under 28 U.S.C. § 1367(a), "[t]he court may decline to exercise such jurisdiction where the claims that permitted original jurisdiction have dropped out of the case." *Kibby v. Chief Auto Parts, Inc.*, 1999 WL 135261, at *6 (N.D. Tex. Mar. 4, 1999) (Fitzwater, J.). "[W]hen all federal claims are dismissed or otherwise eliminated from a case prior to trial, [the Fifth Circuit has] stated that [its] 'general rule' is to decline to exercise jurisdiction over the pendent state law claims." *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)), *overruled on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (en banc). Having dismissed plaintiffs' federal-law claims, the court in its discretion declines at this time to exercise supplemental jurisdiction over their state-law claims.

Accordingly, plaintiffs' claims for abuse of process, invasion of privacy, negligence per se, and civil conspiracy are dismissed without prejudice.[8]

---

[8]If the court later determines that plaintiffs have pleaded a federal-law claim on which relief can be granted, it will decide whether to exercise supplemental jurisdiction over the state-law claims, and, if it does, address any challenges that are properly made to these claims. The court therefore declines at this time to consider any challenges to the state-law claims.

IX

Although the court is granting defendants' motions to dismiss under Rule 12(b)(6), it will permit plaintiffs to replead.  *See, e.g., In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case, unless it is clear that defects are incurable or plaintiffs advise court that they are unwilling or unable to amend in a manner that will avoid dismissal).  Because there is no indication that plaintiffs cannot, or are unwilling to, cure the defects that the court has identified, the court grants them leave to file a second amended complaint within 28 days of the date this memorandum opinion and order is filed.

\*     \*     \*

For the reasons explained, the court denies Phenix's motions to dismiss under Rules 12(b)(1) and 12(b)(2), grants defendants' Rule 12(b)(6) motions as to plaintiffs' federal-law claims, and declines to exercise supplemental jurisdiction over their state-law claims.

**SO ORDERED.**

November 5, 2014.


_____
SIDNEY A. FITZWATER
CHIEF JUDGE